## PUTNAM VS. THE TOWN OF RUBICON.

*Action against town: when it may be brought. Contract by town supervisors with a member of the board.*

1. One member of a town board of supervisors may recover for materials furnished and work performed by him for the town in *repairing* a bridge, at the request and by the authority of the other two supervisors; the work not being let, nor by law required to be let, by formal contract after public notice given and proposals invited. *Pickett v. School District* (25 Wis., 551), distinguished.

2. Such action cannot be maintained, however, until the claim has been presented to the auditing board of the town (R. S., ch. 15, secs. 79, 80); and where the claim was presented to the board of supervisors in December, 1870, an action commenced thereon in February, 1871, is *held* premature, because the town board of auditors could not meet until the last Tuesday in March. Tay. Stats., 368, § 105.

APPEAL from the Circuit Court for *Dodge* County.

This action was commenced in a justice's court to recover the sum of $195 alleged to be due to plaintiff for materials furnished and labor performed by him, at the request of two supervisors of the defendant town, in repairing a bridge.

From a judgment in favor of the plaintiff, defendant appealed to the circuit court.

Upon the trial in the circuit, it appeared that the plaintiff with two others constituted the board of supervisors of said town at the time the labor was performed and the materials furnished for which plaintiff claimed: that the bridge referred to being out of repair, the plaintiff, at the request and under the direction of the other supervisors, repaired or rather rebuilt it, at an actual expense of $172.32, and then notified the other

supervisors; that one of them, upon examination, declared it satisfactory, provided plaintiff would do certain specified things, which he afterwards did, but failed to notify them of the fact; that some time in December, 1870, he caused his claim to be presented for allowance to the other supervisors, and they, at a subsequent meeting of the board, at which he was not present, drew a town order for $82 in his favor, and tendered it to him; that the account was never presented to the auditing board of the town; and that this action was commenced on the 10th of February, 1871, before the annual meeting of that board.

At the close of plaintiff's testimony the circuit court ordered a nonsuit, on the ground that the bridge was never accepted, and that the action was prematurely commenced; and from that judgment plaintiff appealed.

*James B. Hayes* (with *A. Scott Sloan*, of counsel), for appellant:

1. The contract between the two supervisors and appellant was valid. The rule prohibiting contracts between parties occupying such relations to each other is founded on the idea that the individual interest would naturally conflict with that of the public, and applies only to those important matters where regular contracts are made after public notice to invite competition. Even in such cases, the contract is not void, but voidable merely, and may be ratified by the town by an acceptance and user; and then, in case of full performance, the contract price may be recovered; otherwise a recovery may be had on a *quantum meruit. Pickett v. School District*, 25 Wis., 551; *Colby v. Town of Franklin*, 15 id., 311. In this case the town has accepted the work, and tendered an order for a part of the amount claimed. 2. The suit was not prematurely commenced. The statute establishing an auditing board for towns (§§ 104, 105, ch. 15, Tay. Stats.), does not provide for an appeal, nor declare that accounts not presented shall be barred, or that suit cannot be brought before presentation. This account was presented,

itemized and duly verified, and was acted upon by the board, and the town is estopped from saying that it was not presented, or that the meeting of the board was illegal. The provision of statute for the presentation of claims to an auditing board is for the benefit of the town, and may be waived by it. The action of the town in this case is such a waiver.

*Mariner, Smith & Ordway*, for respondent:

1. One supervisor cannot enter into a contract, as a party thereto, with the board of which he is a member. *Pickett v. School District*, 25 Wis., 555. A supervisor acts in a fiduciary capacity, and cannot be allowed to enter into contracts in which he has a personal interest conflicting, or which *possibly may* conflict, with the interest of those he is bound to protect. *Gardner v. Ogden*, 22 N. Y., 343; *York Buildings Company v. Mackenzie*, 8 Bro. P. C., 42; *Lewis v. Hillman*, 3 H. of L. Cases, 607, 629, 630; *In re Bloye's Trust*, 1 McN. & G., 495; *Dwight v. Blackmar*, 2 Mich., 330; *Clute v. Barron*, id., 192; *Ames v. Port Huron Co.*, 11 id., 144; *Ramsey v. Merriam*, 6 Minn., 175; *Allen v. Chatfield*, 8 id., 440. 2. The supervisors had no authority to make the contract originally, and they could not ratify it. *Brody v. Mayor of N. Y.*, 20 N. Y., 319. It is not shown that the town, with full knowledge of all the facts, affirmed the contract. The order issued by the two supervisors and tendered to plaintiff, was void. *Merrill v. Berkshire*, 11 Pick., 273. The user, by the public, of the bridge and highway is not a sufficient ratification. *Taft v. Montague*, 14 Mass., 285. 3. The account was never presented to the auditing board of the town as required by statute (R. S., 1858, ch. 15, sec. 79), and this action was therefore prematurely brought. 4. The contract was entire, and has not been fully performed by plaintiffs, nor has his partial performance been accepted by the defendant. 1 Dane's Abr., 223–5; 2 Greenl. Ev., § 104.

DIXON, C. J. Counsel for the plaintiff argue, that a claim like that sued upon in this action, originating not in an express

formal contract or one where public notice is given and compe-
tition invited, but being for materials furnished and work and
labor performed for the town by one supervisor at the request
and by the direction and authority of the other two, is not
within the rule or policy of the law declared by this court in
*Pickett v. School District*, 25 Wis., 551. They argue, in effect,
since no price was fixed and no specific agreement or promise
made, and nothing done to bind the town farther than in equity
and good conscience it should be bound for the actual value of
the materials received by and labor performed for it, that the
contract, such as it was, is not within the rule forbidding per-
sons holding together a fiduciary relation to others to contract
with one or more of their own number in matters relating to
such trust. They furthermore in effect argue, that, from the
nature of the transaction, there could have been no fraud or
favoritism or actual or intentional violation of trust in the em-
ployment of the plaintiff, and that, so far as the town and char-
acter of the claim made against it are concerned, the situation
of the plaintiff is the very same as would have been that of some
third person of whom the supervisors had made the request or
to whom they had given the direction, and he had furnished
the materials and performed the services in repairing the
bridge. It is not denied, if some person other than the plaint-
iff, or if any one not a member of the board of supervisors, had
supplied the same materials and done the same work, that the
claim of such person would have been a lawful and valid one
against the town. It is conceded that the supervisors, or a
majority of them, had the authority to direct the repair and enter
into the engagement in the manner they did, provided only
they employed some person other than the plaintiff or one of
their own number to procure the materials and perform the
labor. The statute gave the supervisors general power in the
premises, and their rightful exercise of it is not questioned ex-
cept in the particular named. R. S., ch. 19, sec. 1.; 1 Tay.
Stats., 477, § 1.

It is not, in strictness, necessary for this court, in the view it has taken of the case, to decide the question which has thus been presented and argued by counsel on both sides ; and yet we regard it quite proper, under all the circumstances, to do so. We think the contract, if an open employment or engagement of the kind may be properly so called, clearly distinguishable from that involved in the case of *Pickett v. School District*, and the class to which it belongs. The plaintiff had and has no advantages with respect to his claim over and above those which would have been possessed by any other person performing the same services and furnishing the same materials. There was nothing in the employment to tempt or lead him to be unfaithful to or to betray the trust and confidence reposed in him by the inhabitants of the town, as one of their officers. What he did was open and visible to all the inhabitants, and must be presumed to have been known by them, as well as its value and the compensation which he should receive. The town lost no benefit of his services, except it was such as might have been derived from his sitting as one of the board of auditors to examine and allow the account in case the materials had been provided and the work done by some other person. As observed by counsel, there must, in the administration of the offices of towns, be cases constantly arising where immediate repairs of roads and bridges, sometimes more and sometimes less expensive, are required, and where necessity demands that the supervisors themselves, or one of their number, should do or cause the work to be done, and provide the materials. In cases of the kind, usually minor and incidental in their nature and admitting of no delay, great detriment and inconvenience must ensue to the public service and to the town if the supervisors could not do so. It might otherwise happen, in cases of sudden emergency, that urgent public duties must remain unperformed. The supervisors might be wholly unable to procure or employ the services of a suitable third person for the occasion. We think it was competent for the other super-

visors to direct and employ the plaintiff in the manner they did.

It is suggested by council for the town that such employment was improper and unlawful, because of the influence which the plaintiff might have over the minds of his associates as members of the auditing board in the examination and allowance of his account. This argument seems far fetched, and really without any solid foundation. Any other person might have the same or even greater influence; but it is not to be presumed that the auditors would act from or be governed by any such motives. With one justice of the town called in place of the plaintiff, or perhaps with two justices and one supervisor constituting the auditing board, it is not to be presumed that the account of the plaintiff would be treated or fare any better than that of any other individual. With the strong incentive of opposing self-interest actuating each member of the board, and the popular scrutiny and judgment of their action, it must be assumed that the claim presented would not be regarded with too much favor, and that the rights and interests of the town would not be lost sight of or endangered.

But notwithstanding the views thus entertained of the merits of the claim sued upon, we are still of opinion that the judgment appealed from should be affirmed, and that for the reason assigned by the judge of the circuit court in his second conclusion of law upon the facts found by him. We think the suit was prematurely brought. The true intent and policy of the statutes undoubtedly require that demands of the kind shall be presented to the auditing board for examination and allowance, before any action can be maintained upon them against the town. This appears from sections 79 and 80, ch. 15, R. S.; 1 Tay. Stats., 368, §§ 104, 105. It is certainly very wise and proper that the town should not be put to the expense of a lawsuit until after the board of auditors have refused to allow the claim; and such, we think, was the intention of the legisla-

ture.   The demand of the plaintiff occurred sometime in October, 1870, and his account was presented to the board of supervisors in the month of December following.   This action was instituted on the 10th of Febuary, 1871.   The town board of auditors did not, and could not by law, meet until the Tuesday preceding the first Tuesday in April, 1871.   That was the time fixed by statute for the meeting of such board, and at which alone the account of the plaintiff could have been audited and allowed.   He brought suit prematurely, therefore, and cannot now maintain any action until he has first presented his claimed to the auditing board.

*By the Court.*—Judgment affirmed.